**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ASA WAYNE MCCABE,**

         **Petitioner,**

**v.**                                                          **CASE NO. 8:04-CV-332-T-27EAJ**

**JAMES McDONOUGH,[1]**

         **Respondent.**
_____/

**ORDER**

         Petitioner, a State of Florida inmate proceeding *pro se*, filed a Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2001 convictions in the Sixth

Judicial Circuit Court, Pasco County, Florida (Dkt. 1). Respondent has responded in

opposition to the petition (Dkt. 6). Petitioner has filed a reply (Dkt. 7).

**Background**

         Petitioner was charged by an Amended Information with sexual battery of a person

under 12 years of age (Counts I and II: victim A), engaging in a lewd and lascivious act with

a person under 16 years of age (Count III: victim B), and fondling a person under 12 years

of age (Count IV: victim A). The counts as to each victim were severed. On November 15,

2001, a jury found Petitioner guilty as charged on Counts I, II, and IV. Petitioner was

sentenced to a term of natural life in prison on each of the sexual battery convictions and

a term of fifteen (15) years on the fondling conviction, with all sentences concurrent.

_____

         [1]James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as
the proper party for James V. Crosby pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Represented by the public defender on direct appeal, Petitioner contended that the trial court erred in: (1) failing to find [Petitioner's] motion to disqualify the trial judge legally sufficient and commenting on the truth of the basis of the motion; (2) failing to allow both the defense and the State to inquire about Juror Colvin's knowledge of [Petitioner]; and (3) denying [Petitioner's] motion to suppress his confession because it was made during a custodial interrogation without proper warnings (Dkt. 6, Ex. 001). The state appellate court affirmed Petitioner's convictions and sentences on January 24, 2003, with the mandate issuing on February 19, 2003. *See McCabe v. State*, 840 So. 2d 238 (Fla. 2d DCA 2003) (table decision).

On May 19, 2003, Petitioner filed a petition for state habeas corpus relief alleging that appellate counsel was ineffective in failing to raise a claim that the trial court erred in allowing the Amended Information containing a severed count involving a crime against a different victim to go back to the jury (Dkt. 6, Ex. 006). On October 24, 2003, the state appellate court denied the petition (Dkt. 6, Ex. 009).

Petitioner then filed his federal habeas petition asserting four grounds for relief. Respondent acknowledges that the petition is timely but argues that it should be denied because Petitioner has failed to make the showing necessary for relief under 28 U.S.C. § 2254 (Dkt. 6 at 6). Having reviewed the record, the parties' arguments, applicable statutes, and controlling case law, for reasons set forth below, this Court agrees with Respondent.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district

court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003).  Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. for Dept. of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002).  Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**Evidentiary Hearing**

To be entitled to an evidentiary hearing on habeas claims, the petitioner must "allege[] facts that, if proved at the hearing, would entitle petitioner to relief." *Breedlove v.*

*Moore*, 279 F.3d 952, 960 (11th Cir. 2002) (citation omitted). Because "such a hearing

would not assist in the resolution of [Petitioner's] claim[s]," an evidentiary hearing is not

required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a). *See*

*Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006).

## Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is

subject to its provisions. Where, as here, a state court initially considered the issues raised

in the petition and entered a decision on the merits, § 2254(d) governs the review of the

petitioner's claim. *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001). Although the

claims were rejected without written opinion, for a state court's resolution of a claim to be

an adjudication on the merits so that the determination will be entitled to deference for

purposes of federal habeas review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's rationale for such a ruling.

*See Wright v. Sec. for Dep't of Corrs.*, 278 F.3d at 1255.

**Ground One**

Petitioner alleges that Judge Maynard Swanson should have granted Petitioner's

motion to recuse. This issue was raised and rejected on direct appeal. *See McCabe v.*

*State*, 840 So. 2d 238 (Fla. 2d DCA 2003) (table decision).

Under Florida law, a motion to recuse must be granted by the trial court if it is legally

sufficient. *See* Fla. Stat. § 38.10 (2000).[2]  A motion to disqualify a trial judge must,

---

[2] "Whenever a party to any action or proceeding makes and files an affidavit stating fear that he or she will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of that court against the applicant or in favor of the adverse party, the judge shall proceed no further, but another judge shall be designated in the manner prescribed by the laws of this state for the substitution of judges for the trial of causes in which the presiding judge is disqualified. Every such affidavit shall state the facts and the reasons for the belief that any such bias or prejudice exists and shall be accompanied by a certificate of counsel of record that such affidavit and application are made in good faith." Fla. Stat. § 38.10 (2000).

however, comply with the requirements of Fla. R. Jud. Admin. 2.160.[3] *Fischer v. Knuck*, 497 So. 2d 240, 242 (Fla. 1986); *Housing Authority of City of Tampa v. Burton*, 873 So. 2d 356, 358 (Fla. 2d DCA 2004). If the motion does not comply with the requirements of the rule, it must be denied as legally insufficient.

Rule 2.160(c) requires that a motion to disqualify a trial judge be in writing, specifically allege the facts and reasons relied upon for disqualification, and be sworn to by the party signing the motion. *Livingston v. State*, 441 So. 2d 1083, 1086 (Fla. 1983). Rule 2.160(c) also requires a sworn affidavit by the defendant, as well as a certificate of good faith signed by counsel. In addition, Rule 2.160(d) requires that the motion show that the defendant fears that he will not receive a fair trial based on a specifically described prejudice or bias of the judge.[4] A motion to disqualify must be filed by the tenth day following discovery of the information providing grounds for recusal. Fla. R. Jud. Admin. 2.160; *Carrow v. The Fla. Bar*, 848 So. 2d 1283, 1285 (Fla. 2d DCA 2003).

To the extent Petitioner contends that the state judge's refusal to recuse was error under Florida law and procedure, that contention raises an issue of purely state law, not cognizable on federal habeas review. *Mann v. Thalacker*, 246 F.3d 1092 (8th Cir. 2001). A state's interpretation of its own laws or rules provides no basis for federal habeas relief,

---

[3] In 2006, the Rules of Judicial Administration were renumbered, and now the rule governing the disqualification of trial judges is set forth in Rule 2.330. *See In re Amendments to the Florida Rules of Judicial Administration,* 939 So. 2d 966 (Fla. 2006).

[4] The Florida Supreme Court has held that a legally sufficient motion to disqualify must demonstrate "some actual bias or prejudice so as to create a reasonable fear that a fair trial cannot be had." *Downs v. Moore,* 801 So. 2d 906, 915 (Fla. 2001) (quoting *Dragovich v. State,* 492 So. 2d 350, 353 (Fla. 1986)); *see also MacKenzie v. Super Kids Bargain Store, Inc.,* 565 So. 2d 1332, 1334-35 (Fla. 1990) ("In order to decide whether the motion is legally sufficient, '[a] determination must be made as to whether the facts alleged would place a *reasonably prudent person* in fear of not receiving a fair and impartial trial.'")(citation omitted; emphasis added)).

as no federal constitutional question is raised. *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983). Federal review is precluded even when state law claims are couched in terms of due process or equal protection. *See Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976).

Notwithstanding, the Due Process Clause requires a fair tribunal. "A fair trial in a fair tribunal is a basic requirement of due process" *Withrow v. Larkin,* 421 U.S. 35, 46 (1975); *Callahan v. Campbell,* 427 F.3d 897, 928 (11th Cir. 2005) (citing *In re Murchison*, 349 U.S. 133, 136-37 (1955). The state court's rejection of Petitioner's claim based on Judge Swanson's failure to recuse  was not "contrary to" or an "unreasonable application of" clearly established Supreme Court precedent. *Callahan v. Campbell,* 427 F.3d at 929.

Petitioner's motion to recuse filed by his state trial counsel stated:

As grounds for said motion, the following is alleged:

1. That the Defendant is charged with sexual battery.

2. That the Defendant believes that he will not receive a fair trial and or hearings if presided by this Honorable Court because of prior contacts between the Defendant and Judge Swanson.

3. That an Affidavit by the Defendant is attached.

4. That the Defendant believes that this Honorable Court might be prejudiced in his rulings because he is predisposed to place the Defendant in prison.

Dkt. 6, Ex. 12, Vol. V at R. 148-49.

In the affidavit attached thereto, Petitioner averred:

1. My name is Asa W. McCabe.

2. I believe that I will not receive a fair trial or hearing with Judge Swanson.

-6-

3. I believe that Judge Swanson is biased against me because in prior proceedings he has accused me of being a con artist and playing the system.

4. Due to previous rulings, I am in fear that I will not receive a fair trial and that Judge Swanson is biased.

*Id*. at R. 150.[5]

The legal sufficiency of the motion is purely a question of state law. The comments about which Petitioner complains in paragraph 3 of his affidavit were made by Judge Swanson during a pretrial hearing conducted on June 23, 1999 – nearly two years prior to the filing of the motion to recuse on May 18, 2001. A review of the transcript of the hearing reveals that the comment was made in the following context:

| | |
|---|---|
| Court: | Mister McCabe, you don't have a lawyer? |
| Petitioner: | No. |
| Court: | Are you ready for trial? |
| Petitioner: | No. I need an attorney. |
| Court: | Okay. As I recall, you had dismissed the Public Defender the last time. |

---

[5] During the hearing on the motion to recuse, Petitioner expanded the scope of the allegations presented in his motion to assert that he feared he would not get a fair trial before Judge Swanson due to gender bias, contending that his fear was based on a comment attributed to Judge Swanson in an article published in the St. Petersburg Times on August 1, 1998 regarding the sentence imposed on Petitioner's co-defendant Tammy Lynn Baker (Dkt. 6, Ex. 12, Vol. IV at R. 235-39). According to trial counsel, Petitioner informed him that Judge Swanson was quoted as saying "[I]f you were a man, I wouldn't even hesitate, you would be going to jail." *Id*. at R. 236. *See* Chase Squires, *Sentence Lenient for Woman in Child Abuse Case*, St. Petersburg Times, Aug. 1, 1998, at 10. Trial counsel informed Judge Swanson that Petitioner felt that the comment indicated that he was biased against men (Dkt. 6, Ex. 12, Vol. IV at R. 236). Although Petitioner placed the content of the article at issue by asserting that it caused him to have a "well-founded fear" of gender bias at sentencing, a copy of the article was not presented to Judge Swanson. To the extent that this may be considered an oral "amendment" of the motion to recuse, it does not appear that the allegation of gender bias was ever reduced to writing, as required under Fla. R. Jud. Admin. 2.160(e) ("Any motion for disqualification made during a hearing or trial must be based on facts discovered during the hearing or trial and may be stated on the record, provided that it is also promptly reduced to writing in compliance with subdivision (c) and promptly filed"). The writing requirement cannot be waived. *See Rogers v. State*, 630 So. 2d 513, 516 (Fla. 1993). Thus, the issue was never properly before Judge Swanson.

Petitioner:        Yes, sir.

Court:             Why?

Petitioner:        Conflict of interest.  He put in a motion to withdraw, and you granted it.

Court:             Didn't I tell you at that time if the public defender withdraws, you were going to have to either hire your own lawyer or proceed without a lawyer?

Petitioner:        I have the constitutional right to go to trial with counsel, Your Honor.  And I can't afford an attorney.[6]

Court:             What says the State.

Prosecutor:        Judge, if I can have a moment. My understanding is that Mr. Williams was representing Ms. McCabe.

Public Defender:   He withdrew, Your Honor. We have a letter confirming request for counsel. I think we withdrew before Mr. Williams.

Prosecutor:        Judge, my understanding is that according to the motion to withdraw that I have in my file, is that Mr. Williams filed the motion to withdraw on behalf of Mr. McCabe. He wasn't the one that wanted it.

Petitioner:        I requested him [to] withdraw due to a conflict of interest, and he did.

Court:             You've had two lawyers. You've got the Public Defender lawyers. *I think you're playing something.  I'm not going to be conned by you anymore.*  You are going to trial with or without a lawyer.

                   Don't try to pull any of this stuff.  You've had enough time.  You' [sic] knew you were going to trial.  You don't want a lawyer. Tough luck.  You're going to go to trial without one.

---

[6] Judge Swanson appointed counsel to represent Petitioner shortly after he was charged. *See* Dkt. 6, Ex. 12, Vol. V at R. 3-4.  He moved to withdraw on June 7, 1999 based on a conflict of interest after Petitioner filed a complaint against him with The Florida Bar Association. *Id*. at 23. The motion was granted June 9, 1999 and on August 9, 1999, the public defender was appointed to represent Petitioner. *Id*. at 25; 27. On August 23, 1999, the public defender withdraw because the office was representing the victim in this case in another matter and a special public defender was appointed to represent Petitioner. *Id*.

Dkt. 6, Ex. 12, Vol. IV at R. 211-13 (emphasis added). As Respondent correctly points out, under Fla. R. Jud. Admin. 2.160, when a ground for disqualification is known before trial, a motion to disqualify a trial judge must be made "within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling." Fla. R. Jud. Admin. 2.160(e). Petitioner's motion to recuse was therefore untimely.

Likewise, Petitioner's assertion in paragraph 4 of his affidavit that previous rulings by Judge Swanson placed him in fear that he would not receive a fair trial was insufficient to support his motion. It is well-established in federal and Florida courts that mere allegations of prior adverse rulings are legally insufficient to require disqualification. *See United States v. Bailey*, 175 F.3d 966, 969 (11th Cir. 1999) ("Bias sufficient to disqualify a judge . . . must stem from extrajudicial sources"); *Wilson v. Renfroe*, 91 So. 2d 857, 860 (Fla. 1956); *see also Hope v. State*, 449 So. 2d 1315 (Fla. 2d DCA 1984) (finding that the fact that the judge found the defendant guilty of civil contempt was legally insufficient to disqualify the judge from adjudication of a criminal contempt charge against the defendant).

Nonetheless, Judge Swanson held a hearing on the motion, finding:

> Obviously, the Court is aware a motion to recuse merely requires that the reasons stated would be legally sufficient for recusal, and do not require either evidence of the matters made or the truthfulness of the assertions. As they develop, I believe -- probably with the exception of assertion, bias against the defendant -- the assertions made in the affidavit appear to be truthful. I'm sure I said that, I don't recall saying it.
>
> I usually have no particular problem with recusing myself just to avoid conflict. But I think the -- I don't think that the assertions made really would, even if true, necessarily say I'm biased against the defendant. I don't think there's a sufficient factual basis here to justify a legal sufficiency.

> I'm sorry, I'm going to deny the motion to recuse. I don't think the assertions are legally sufficient to justify recusal. I do not -- I think it's clearly improper for me to even express whether I agree or disagree with them, so I make no comment on that particular point. But I think on their face alone -- I understand the situation -- but I think on the face alone, even if everything that was said was true, I don't think it's sufficient to justify in this particular case.

Dkt. 6, Ex. 12, Vol. IV at R. 238-239.

Rule 2.160 requires that when filing a motion to disqualify, the attorney for the movant separately certify that the motion and the defendant's statements are made in good faith. Fla. R. Jud. Admin. 2.160(c). *See, e.g., Berkowitz v. Rieser*, 625 So. 2d 971 (Fla. 2d DCA 1993) (motion to recuse without attorney certification of good faith not legally sufficient). That Petitioner's motion was not accompanied by trial counsel's certificate of good faith rendered the motion legally insufficient under Rule 2.160(c). Judge Swanson's rejection of the motion to recuse himself is consistent with the requirements of Rule 2.160. *See Dominguez v. State*, 944 So. 2d 1052, 1053 (Fla. 4th DCA 2006) (both untimeliness and the lack of certification justify denial of motion to disqualify).

Finally, Petitioner's contention that Judge Swanson was predisposed to sentence him "harshly" based on gender bias was, as discussed *supra* n.6, never properly placed before the trial court.

The state appellate court's rejection of Petitioner's claim that Judge Swanson erred in denying his motion to recuse as legally insufficient is supported by the record. Petitioner was tried before a jury. Judge Swanson was not the trier of fact. Petitioner's sentence was mandated by statute. The record does not demonstrate that a personal bias existed on the part of Judge Swanson, the appearance of bias or the probability of bias. Moreover, the

-10-

facts alleged were not such that a reasonable person would be convinced that a bias

existed. *See Tafero v. Wainwright* 796 F.2d 1314, 1322 (11th Cir.1986), *cert. denied*, 483

U.S. 1033 (1987); *Fischer v. Knuck*, 497 So. 2d at 242; *see also Kowalski v. Boyles*, 557

So. 2d 885 (Fla. 5th DCA 1990) (finding the petitioner's subjective fears of partiality not

reasonably sufficient to create a well-founded fear supporting disqualification of judge).

The state appellate court's rejection of Petitioner's claim was not contrary to or an

unreasonable application of clearly established Federal law nor did it result in a decision

that was based on an unreasonable determination of the facts in light of the evidence. 28

U.S.C. § 2254(d)(2). Not only must the factual determination have been unreasonable, but

the state court's factual findings must be shown unreasonable by clear and convincing

evidence. § 2254(e)(1). *Callahan v. Campbell,* 427 F.3d at 926.  Petitioner has not made

this showing.

**Ground Two**

In Ground Two, Petitioner asserts that the trial court erred in answering a question

proffered by Juror Colvin.  On the first morning of trial, the trial court was informed that the

only alternate juror had been hospitalized.[7]  During opening statements, trial counsel stated

that at the time of his arrest, Petitioner was employed as a security guard (Dkt. 6, Ex. 12,

Vol. III at Tr. 144).  After the jury heard testimony by Christi Penrod, the victim's aunt, and

Brian Kailbourn, the case worker assigned to assist the victim on behalf of the Florida

Department of Children and Families, the following exchange occurred:

---

[7] The single alternate juror chosen was hospitalized after the jury was sworn but before opening statements (Dkt. 6, Ex. 12, Vol. III at Tr. 134).

Juror Colvin:   Can I ask a question?

Court:          Sure.

Juror Colvin:   They mentioned he was a security guard, and it triggered my memory where I used to live, and he looks familiar. I want to make sure I'm not in the position where I shouldn't be.

Court:          There's not much we can do about it now. Whatever happens, is that going to affect your judgement as a juror in this case?

Juror Colvin:   No. I just felt uncomfortable.

Dkt. 6, Ex. 12, Vol. III at Tr. 154-155.

During voir dire, the trial court asked the jury panel generally whether they knew anything about the instant case and specifically whether they knew Petitioner either by relation, business or social involvement.  The prospective jurors replied in the negative (Dkt. 6, Ex. 12, Vol. I at Tr. 10).  The transcript is not entirely consistent with Petitioner's assertion that Juror Colvin stated during the trial that he "remembered [Petitioner] from where he used to live" (Dkt. 2 at 9).  A statement that the defendant looks *familiar*, without more, is hardly a basis for excusing a juror and declaring a mistrial.  Moreover, here, Juror Colvin assured the trial court, explicitly and unambiguously, that this would not affect his judgment in the case. (Dkt. 6, Ex. 12, Vol. III at Tr. 155).  Petitioner has not shown that Juror Colvin exhibited behavior that would negate his ability to be a fair, impartial juror. This Court must presume, therefore, that the jurors were fair and impartial, "as indeed they swore to be." *United States v. Khoury,* 901 F.2d 948, 955 (11th Cir. 1990) (footnote omitted).

Likewise, Petitioner's assertion that the trial court "fail[ed] to allow" either side to inquire "about Juror Colvin's knowledge of [Petitioner]" is not supported by the record.

-12-

Neither party requested to question Juror Colvin either during the exchange between Juror Colvin and the trial judge or after it concluded. As Respondent points out, the trial court did not preclude anyone from questioning Juror Colvin or prevent trial counsel from objecting, seeking a bench conference, moving for a mistrial or any other avenue of redress. Dkt. 6, Ex. 12, Vol. III at Tr. 155.

Petitioner's argument that the trial court erred in failing to "apply Rule 3.300 and/or Rule 24 [Fed. R. Crim. P.] when the juror told the court that he now remembered the defendant" is equally unavailing. Rule 3.300, which governs the conduct of the voir dire proceedings in Florida courts, is not applicable because the event about which Petitioner complains involved a sworn juror's question after trial had started.

Finally, Petitioner's reliance on the rule governing the conduct of criminal trials in federal court is misplaced. It is well-settled that the procedures prescribed by the federal rules merely set the standard for federal courts. They do not establish a constitutional standard. *See, e.g., Frank v. Blackburn*, 646 F.2d 873, 887 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir.) (per curiam), *cert. denied*, 454 U.S. 840 (1981);[8] *see also Gaddy v. Linahan*, 780 F.2d 935, 943 n.8 (11th Cir. 1986) (citation omitted).

Notwithstanding, if the trial court violated a rule governing criminal proceedings in Florida courts, that would not, standing alone, entitle Petitioner to federal habeas relief. Federal courts do not enforce state procedural rules. *See Wallace v. Turner*, 695 F.2d 545,

---

[8] Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

548 (11th Cir. 1983). A violation of state procedural rules does not *of itself* raise a constitutional question reviewable by federal habeas courts. *Id.*; *Stewart v. Estelle*, 634 F.2d 998, 999 (5th Cir. 1981); *Van Poyck v. Wainwright*, 595 F.2d 1083 (5th Cir. 1979).

Petitioner has failed to establish that the state appellate court's adjudication of Ground Two was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

**Ground Three**

Petitioner asserts that the trial court erred in failing to grant his motion to suppress statements and admissions he made to Detective Landsberg. The state court conducted a hearing on Petitioner's motion to suppress. (Dkt. 6, Ex. 12, Vol. V at R. 47-131). The record confirms that Petitioner was afforded a full and fair opportunity to develop the factual basis for his claim in the state trial court. During the hearing, Detective Landsberg testified that he was assigned to the Crimes Against Children Unit when he received a call regarding the victim's statement that she had been having sexual relations with Petitioner, her step-father. *Id.* at R. 50-51. Landsberg interviewed the victim while Deputy Raulerson contacted Petitioner at his place of employment. *Id.* at R. 51. Landsberg testified that at the time he initially came into contact with Petitioner, he only wanted to interview Petitioner regarding the allegations.

Raulerson testified that he contacted Petitioner at his place of employment and advised him that Detective Landsberg would like for him to come in for an interview. Petitioner agreed to do so. Raulerson told Petitioner that he was preparing to drive back

to the Sheriff's Office and would be using a back entrance into the facility.  Raulerson told

Petitioner that if he wanted to use the same entrance, he would wait and Petitioner could

follow him. Raulerson testified that no promises or threats were made to Petitioner to

induce him to drive to the Sheriff's Office. *Id*. at R. 62-66.

Petitioner arrived at the Sheriff's Office at approximately 5:00 a.m. *Id*. at R. 52.

Detective Landsberg met Petitioner at the door and after introducing himself, escorted

Petitioner to an interview room.  Once inside the interview room, the entire conversation

between Petitioner and Detective Landsberg was videotaped. *Id*. Petitioner does not deny

making the statements about which he now complains. Petitioner asserts rather that the

statements and admissions were procured in violation of his *Miranda*[9] rights and complains

that he was never advised that the interview was being recorded.

Trial counsel filed a motion to suppress Petitioner's statements, contending that

Petitioner was compelled to submit to questioning by Detective Landsberg.  The videotape

was played for the trial court during the suppression hearing.  The interview began with

pleasantries being exchanged and Petitioner's own comments demonstrate that he was

"willing to cooperate":

> Landsberg: Okay.  I appreciate you coming down here.  I've been up -- I started
> this at seven o'clock last night.
>
> Petitioner:　I've been up since about 6:00 yesterday.
>
> Landsberg: Well, I fully understand.  Thank you for coming in.  I appreciate it. I
> know you're probably beat; I'm beat, too.
>
> Petitioner:　[Inaudible]

---

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Landsberg: [Inaudible] What I need to do is I want to ask you some questions about the case I've been working on. I'm sure you can shed some light on it. I'm sure you can. You're not in custody; you're not under arrest. There's the door. It's unlocked.

Petitioner: I'm willing to cooperate. I trying to find out what the hell is going on.

Landsberg: Well, it's hard to say, because I work in crimes against children. See, I got -- your daughter is down there in my office.

Petitioner: Yeah, and her friend, Cissy.

. . . . .

*Id.* at R. 69-71.

After hearing the testimony of Detective Landsberg, Deputy Raulerson, and

Petitioner, viewing the video tape, and hearing argument by counsel, the trial court found:

The Court would find that that was a pre-custodial interrogation, that the defendant freely and voluntarily appeared and made statements.

The Court would find there's no evidence of coercion. And although I suspect Officer Landsberg may very well have considered one of the possibilities that the defendant may, in fact, be charged, I cannot and do not find, as counsel suggested, that his statements were ludicrous, that he did not intend to arrest the defendant. But I cannot find from the evidence that there's any evidence to support the finding that this was, in fact, a focus of the investigation on this defendant based upon what Detective Landsberg himself has said.

Accordingly, therefore, the Court does at this time deny the motion to suppress.

Dkt. 6, Ex. 12, Vol. V at R. 129-130.

Petitioner filed an amended motion to suppress on January 29, 2001, which the

State moved to strike. *Id.* at R. 140; 144. After hearing oral argument from counsel, the

trial court granted the motion to strike, finding that trial counsel was "present[ing] merely

additional arguments upon the evidence already presented." Dkt. 6, Ex. 12, Vol. IV at R.

-16-

354.[10]

In *Miranda*, the Supreme Court held that evidence obtained as a result of a *custodial interrogation* is inadmissible as having been obtained in violation of the Fifth Amendment right against self-incrimination unless the defendant has first been advised that he had the right to have counsel present during any questioning and the right to remain silent and if he gave up those rights, anything he said could be used against him in a court of law. Advisement of these rights is not required under the Fifth Amendment or Article I, Section 9 of the Florida Constitution unless the individual is both in custody and being interrogated. *See Rhode Island v. Innis*, 446 U.S. 291 (1980); *Davis v. State,* 698 So. 2d 1182, 1188 (Fla. 1997) ("*Miranda* warnings are required whenever the State seeks to introduce against a defendant statements made by the defendant while in custody and under interrogation. Absent one or the other, *Miranda* warnings are not required.").

The *Miranda* court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. at 481; *United States v. Castro,* 723 F.2d 1527, 1530 (11th Cir. 1984). In considering trial counsel's argument in support of the motion to suppress, the trial court determined that Petitioner's

---

[10] The hearing on the motion to strike the amended motion to suppress commenced before the Honorable Wayne L. Cobb. When the State argued that Judge Swanson's finding that Petitioner's statements were not made during a custodial interrogation was the law of the case, Judge Cobb consulted with Judge Swanson regarding the status of the case. When he returned to the bench, Judge Cobb announced that the motion to strike would be heard by Judge Swanson later in the day. Thus, there are two transcripts in the record for the hearing on the motion to strike the motion to suppress. *See* Dkt. 6, Ex. 12, Vol. IV at 344-56 [Judge Swanson] and R. 361-69 [Judge Cobb]. The transcript of the hearing conducted by Judge Swanson is dated April 6, 1998. Based on the argument presented at the hearing, it is clear that this is a mere scrivener's error of no import to these proceedings.

statements were made during a "pre-custodial interrogation" (Dkt. 6, Ex. 12, Vol. V at R. 129-30). In Florida, a trial court's findings regarding whether a suspect was in custody are clothed with a presumption of correctness. *See Acensio v. State*, 497 So. 2d 640, 642 (Fla. 1986). In a federal habeas proceeding, however, a state court's determination on the custody issue is a mixed question of fact and law that is not entitled to the statutory presumption of correctness accorded state court decisions under 28 U.S.C. § 2254(e). The Court must, nonetheless, give deference to unrebutted findings of fact made by the state trial court. *See Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert denied*, 534 U.S. 1046 (2001).

While Petitioner contends that his "*Miranda*" rights were violated, his testimony during the hearing on the motion to suppress refutes his contention that he was subjected to a "custodial" interrogation. *See Miranda*, 384 U.S. at 444. Petitioner testified that Deputy Raulerson "asked" him to go to the Sheriff's Office to speak with Detective Landsberg, which is consistent with the testimony of Detective Landsberg and Deputy Raulerson. Petitioner further testified as follows:

| | |
|---|---|
| Trial Counsel: | Why did you follow the deputy? |
| Petitioner: | Because he requested me to. |
| Trial Counsel: | Did you feel you had to follow him? |
| Petitioner: | Yes, sir. |
| Trial Counsel: | When you got to the sheriff's office, why did you go into the sheriff's office? |
| Petitioner: | I was escorted in by the deputy. |
| Trial Counsel: | You feel you had to go in? |

-18-

Petitioner:      Yes, sir.

Trial Counsel:   And when you sat down with Detective Landsberg, were you read your constitutional rights?

Petitioner:      No, sir.

Trial Counsel:   Did you in fact want an attorney?

Petitioner:      I didn't even know what was going on.

Trial Counsel:   Why didn't you get up and leave?

Petitioner:      I was always taught to never argue with law enforcement officers, don't leave unless they walk away from you.

Trial Counsel:   Did you feel you could leave?

Petitioner:      No, I didn't.

                 . . . . .

Prosecutor:      [Deputy Raulerson] didn't tell you that you had to come, did [he]?

Petitioner:      He requested me to follow him back to Dade City.

Prosecutor:      He did not say "You have to come to Dade City" did he?

Petitioner:      He requested me to come to Dade City, follow him back to Dade City, that a detective wanted to talk to me.

Prosecutor:      Now, you watched the videotape, correct, sir?

Petitioner:      Yes.

Prosecutor:      You would agree that you were laughing with the officer?

Petitioner:      Which is something I normally do when I'm tired, wanting to go to sleep.

Prosecutor:      You were conversing with him freely?

Petitioner:      Which is my attitude when I'm wanting to go to sleep, I'm tired, run down.

Dkt. 6, Ex. 12, Vol. V at R. 122-25.

"[G]eneral questioning . . . during the fact-finding process do[es] not trigger *Miranda* warnings." *Garcia v. Singletary*, 13 F.3d 1487, 1489 (11th Cir. 1994). As recognized in *Miranda*, an "[i]nvestigation may include inquiry of persons not under restraint" as law enforcement seek out evidence to be used at trial. 384 U.S. at 478. The pre-*Miranda* exchange between Detective Landsberg and Petitioner does not reveal any of the significant restraint of freedom characteristics of a custodial interrogation.

Detective Landsberg testified that having heard the victim's allegations and having spoken with the other individuals she implicated, his questioning of Petitioner was merely an attempt to investigate the reported abuse. In finding that Petitioner was not the focus of the investigation when Detective Landsberg asked that he come in for an interview, the trial court found Detective Landsberg's testimony to be credible. Petitioner fails to rebut by clear and convincing evidence the presumption of correctness accorded the trial court's factual finding. *See* 28 U.S.C. § 2254(e); *see also Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). Likewise, Petitioner has failed to rebut the trial court's finding that there was no evidence of coercion. Petitioner did not give the trial court any reason during the suppression hearing to find that the officers' conduct during the exchange between Deputy Raulerson and Petitioner at his place of employment or during his interview at the Sheriff's Office was coercive. *See Lukehart v. State*, 776 So. 2d 906, 918 (Fla. 2000).

As Petitioner has failed to demonstrate that his statements were the product of a custodial interrogation or otherwise coerced, the video recording of his interview was not a violation of his constitutional rights and was not excludable under *Miranda*. The state trial court was in the unique position of being able to observe Petitioner's interview on the video

-20-

recording. The judge was able to assess the circumstances of the interview, including the demeanor of the participants. The Supreme Court has cautioned that "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

The trial court's decision is fairly supported by the record. *See also Berkemer v. McCarty*, 468 U.S. at 442; *Baldwin v. Johnson*, 152 F.3d 1304, 1320 (11th Cir. 1998); *McCoy v. Newsome*, 953 F.2d 1252, 1263 (11th Cir. 1992) (subsidiary findings such as the circumstances of the defendant's interrogation and the actions of law enforcement officers "are entitled to a presumption of correctness if fairly supported by the record[ ]"). Giving due deference to the trial court's finding on the motion to suppress pursuant to 28 U.S.C. § 2254(e), this Court finds that this claim must be denied.

**Ground Four**

In his final claim, Petitioner asserts that appellate counsel was ineffective in failing to assert on direct appeal that the trial court erred in allowing the Amended Information containing a severed count involving a crime against a different victim to go back to the jury.   This claim was raised and summarily rejected in Petitioner's state habeas proceedings.

To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing

professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d at 835-37. State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect. *See* § 2254(e)(1)

The *Strickland* test for ineffective assistance applies to claims of ineffective assistance of appellate counsel. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). In order to prevail, a petitioner must show that appellate counsel's performance was deficient and that this performance prejudiced the defense. *Id.* Counsel does not provide ineffective assistance when frivolous or meritless arguments are not raised on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *see also United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992). The Sixth Amendment does not even require appellate advocates to raise every non-frivolous issue. *Heath*, 941 F.2d at 1130-31. Instead, effective advocates "winnow out" weaker arguments even though the

weaker arguments may be meritorious. *Id.* To determine whether appellate counsel rendered ineffective assistance by failing to raise a particular issue on appeal, the merits of the issue must be examined. *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988).

Here, to be entitled to relief, Petitioner must establish that the state appellate court's determination that the claim raised in his state habeas petition lacked merit was objectively unreasonable under the *Strickland* standard or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).

In his claim that appellate counsel was ineffective, Petitioner states, *inter alia*, that:

> It is Petitioner's claim that the jury received state's charging information that included the severed count 3 involving a like crime against another victim which Petitioner did not go to trial on and is a violation of Petitioner's Fifth, Sixth, and Fourteenth Amendment rights of the United States Constitution of a fair and impartial trial.

Dkt. 2 at 15.

Where jurors consider matters not in evidence, to the prejudice of a defendant, a new trial is mandated. *See Banos v. State*, 521 So. 2d 302 (Fla. 3d DCA 1988); *Meixelsperger v. State*, 423 So. 2d 416 (Fla. 2d DCA 1982); *Turner v. State of Louisiana*, 379 U.S. 466, 472 (1965); *United States v. Howard*, 506 F.2d 865, 868 (5th Cir. 1975). Like the Florida Supreme Court, this Circuit has applied the test used by the Fifth Circuit in *Rodriguez Y Paz v. United States*, 473 F.2d 662, 663-64 (5th Cir.), *cert. denied*, 414 U.S. 820 (1973), and *Howard*, 506 F.2d at 869, which limits the trial court's inquiry to cases involving overt acts that might have influenced the jury's verdict. *See United States v. Perkins*, 748 F.2d 1519, 1533 (11th Cir. 1984); *State v. Hamilton*, 574 So. 2d 124, 127-30 (Fla. 1991).

As to Petitioner's contention that the four count Amended Information was sent back to the jury, Respondent correctly contends "that the record does not support this conclusion." Nothing in the record indicates that a copy of the Amended Information was sent back to the jury. Respondent concedes that the State did not file an amended information deleting Count Three of the Amended Information. (*See* Dkt. 6, Ex. 12, Vol. V at R. 20-21). Respondent contends, however, that Petitioner''s effort to "bootstrap" this oversight to a claim that the jury received "extraneous" material during its deliberations fails because Petitioner has failed to demonstrate that the Amended Information was made available to the jury, much less read by any juror. Respondent is correct.

As Petitioner correctly argues, once there has been an objective demonstration that extrinsic facts have been disclosed in the jury room, the trial court must reach a decision concerning the subjective effects of the objective facts and a rebuttable presumption of prejudice is raised with the state bearing the burden of demonstrating that consideration of the evidence was harmless. *United States v. Perkins*, 748 F.2d at 1533; *State v. Hamilton*, 574 So. 2d at 127-30. Petitioner provided no factual support for his contention in either his state or federal pleadings. He simply speculates that the Amended Information went back to the jury and takes issue with Respondent's reliance on the Clerk's docket notes. That is not enough to support a finding that appellate counsel was ineffective in failing to advance the argument.

"To justify a post-trial hearing involving the trial's jurors, the defendant must do more than speculate; he must show clear, strong, substantial and incontrovertible evidence . . . that a specific, nonspeculative impropriety has occurred." *United States v. Cuthel*, 903

-24-

F.2d 1381, 1383 (11th Cir. 1990) (quotations and citations omitted). "In other words, there must be something more than mere speculation." *United States v. Barshov,* 733 F.2d 842, 851 (11th Cir. 1984) (citation omitted). Petitioner has failed to show that the integrity of the trial process was impugned in any way.

The transcript reflects that when jury selection began, the trial court instructed the jurors:

> An Information is merely the formal charges against the Defendant. It tells the Defendant what he is being accused of. It is not evidence of guilt, nor should you consider it as any proof of guilt the fact that an Information has been filed against the Defendant.
>
> Now, in this case, there's three counts on this Information. By that I mean, there are three criminal charges being – against the Defendant. They're being tried together for convenience sake. But when the time comes to reach verdicts, you have to reach your separate and individual verdict as to each count of the Information.

Dkt 6, Ex. 12, Vol. I at Tr. 6-7. Without referencing Count III, the trial judge read the charges in Counts I, II, and IV of the Amended Information as Counts I through III. *Id.* at 7-9. No mention was made in the presence of the jury of the severed count involving another victim. When the jury was charged, the trial court referred to Counts I and II, the sexual battery charges, and Count III, the handling and fondling charge (Dkt. 6, Ex. 12, Vol. II at Tr. 347). A verdict form was prepared for each of those three counts and submitted to the jury. *(Id.* at Tr. 356).

As noted, nothing in the record suggests that the Amended Information was given to the jury. As the Eleventh Circuit cautioned in *Chandler v. United States,* "[a]n ambiguous or silent record is not sufficient to disprove the strong and continuing presumption . . . that [counsel] did what he should have done and that he exercised reasonable professional judgment." 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001).

-25-

Appellate counsel filed a 34-page appellate brief raising three claims for relief. As the comprehensive statement of facts in the brief and the detailed references to the trial transcripts demonstrate, appellate counsel was intimately familiar with the entire record on appeal. Appellate counsel cannot be faulted for not raising on appeal an issue that is not supported by the record. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984); *Peterka v. State*, 890 So. 2d 219, 242 (Fla. 2004). The trial court's rejection of this claim is entirely consistent with *Strickland*'s test for ineffective assistance of counsel.

Petitioner further argues that the trial court violated Fla. R. Crim. P. 3.400 (Materials to the Jury Room), which he analogizes to 28 U.S.C. § 606(b) (Duties of the Deputy Director of the Administrative Office of the United States Courts) and Fed. R. Crim. P. 33 (New Trial). His reliance on these rules in support of his argument that a violation of Rule 3.400 is "a violation of clearly established federal law" is misplaced. (Dkt. 7 at 17). The federal rules do not establish constitutional or procedural standards for state court proceedings. Petitioner's reliance on Rule 3.400 is likewise misplaced. Rule 3.400 describes what a trial judge may send back to a jury retiring for deliberations, including things received in evidence, verdict forms, written instructions and a copy of the charges. Under Fla. R. Crim. P. 3.400(a), the trial judge may, at his discretion, allow the jury to take the Information into the jury room during deliberations. *See Young v. State*, 641 So. 2d 401, 403 n.4 (Fla. 1994); *Donaldson v. State*, 356 So. 2d 351, 352-53 (Fla. 1st DCA 1978); *Roberts v. State*, 188 So. 2d 392 (Fla. 3d DCA 1966). This rule does not support Petitioner's contention that his appellate counsel was ineffective or that the state court's resolution of that claim was contrary to clearly established federal law.

-26-

Applying the standards required by § 2254(d), Petitioner has not demonstrated that the state court's adjudication of this claim resulted in a decision that is contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

### Conclusion

Petitioner has failed to establish that he is entitled to federal habeas relief. ACCORDINGLY, his Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1) and the **Clerk** is directed to enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE AND ORDERED** in Tampa, Florida, this 30ᵗʰ day of April 2007.

JAMES D. WHITTEMORE
United States District Judge

Copies furnished to:
Petitioner, *pro se*
Counsel of Record